IN RE THE INVESTIGATING COMMISSION.

The governor may *mero motu* appoint agents or commissioners to examine and report alleged abuses in the management of the Board of State Charities and Corrections, and their report will be a privileged communication, and not actionable without proof of express malice.

But such commissioners so appointed will not be officers under Pub. Stat. R. I. cap. 23, § 5, and can neither administer oaths nor compel witnesses to appear before them and testify.

UNDER article 10, section 3, of the constitution of the State providing that " the judges of the Supreme Court shall give their written opinion upon any question of law whenever requested by the governor, or by either house of the General Assembly," the governor addressed in October, A. D. 1887, the following communication to the justices of the court:

*To the Honorable Judges of the Supreme Court :*

I have the honor to submit the following matters for the consideration of the judges of the court:

" Whereas representations have been made to me of malfeasance and nonfeasance in the management of the state prison, and of some of the other penal institutions of the State under the charge of the Board of State Charities and Corrections, of such a character that if they should be ascertained to be true it would be my duty to suspend, or, with the consent of the Senate, to remove from office the members of said board who have been responsible for such malfeasance or nonfeasance:

" Wherefore, inasmuch as it is inconvenient and perhaps will be impossible for me in person to make due inquiry into the truth of the said representations, I request the written opinion of the judges of the court whether I may, as governor, in aid of the due execution of the duties of my office, and to enable me more certainly to take care that the laws be faithfully executed in accordance with right to all parties, appoint persons and commission them to make inquiry as to the truth of said representations, and to report to me the facts as they may ascertain them to be, with their recommendation to me thereon ; and whether such commission may summon witnesses to matters pertinent to such inquiry, compel them to testify, and take their testimony under oath, and

whether the members of such commission will be protected in acting thereon and in making their report to me."

<div align="right">JOHN W. DAVIS, <em>Governor.</em></div>

<div align="center">OPINION OF THE COURT.</div>

<div align="center"><em>October 5,</em> 1887.</div>

*To His Excellency John W. Davis, Governor of the State of Rhode Island and Providence Plantations :*

We have received from your Excellency a communication asking for our opinion upon the three following questions, to wit :

" *First,* Whether you have power to appoint and commission persons to inquire into the truth of certain representations which have been made to you of malfeasance and nonfeasance in the management of the state prison and some of the other penal institutions under the Board of State Charities and Corrections, and report the facts ;

" *Second,* Whether, if persons be so appointed and commissioned, they can summon witnesses, and compel them to testify under oath to matters pertinent to the inquiry ; and,

" *Third,* Whether they will be protected in acting under their commission and making report to you."

We think your Excellency has power to appoint or employ others to make the inquiry for you and report the facts ; but we are of opinion that the persons so appointed would not be officers within the meaning of section 5 of chapter 23 of the Public Statutes, which provides that " a commission shall issue to every person elected to office by the General Assembly, to every justice of the peace elected by any town, and to every person appointed to office by the governor," and that therefore their commission, if their appointment be by commission, will give them no power and no protection which they would not have without it. We think the offices meant in the section quoted are offices recognized or created by the constitution or statutes of the State, not such appointments as are contemplated in your communication.

We think the second question must be answered in the negative. Members of commissions of inquiry appointed by the governor are not mentioned among the officers and persons upon

whom power to administer oaths is conferred by statute, and we know of no rule or principle of the common law under which they can administer oaths, and, still less, under which they can summon witnesses and *compel* them to testify under oath before them. The way in which unwilling witnesses are compelled to testify is by fine or imprisonment for contempt. Power to punish for contempt is a high judicial power, exceedingly summary and absolute in its exercise. It seems to be confined at common law in England to the two houses of Parliament and to courts of record, and in this country it has been held to have but little, if any, wider latitude. *Remington & Perkins* v. *Peckham*, 10 R. I. 550. We do not think the power can be implied in favor of the commission, because your Excellency has power to suspend, or, with the consent of the Senate, to remove from office, members of the Board of State Charities and Corrections for malfeasance or nonfeasance, or because it is declared by the constitution that " the governor shall take care that the laws be faithfully executed," for, as we remarked in the recent case of *Hanley* v. *Wetmore*, 15 R. I. 386, the governor, in performing his duty under this clause, " has no arbitrary power, but must himself proceed according to law."

The first part of the third question is answered by our answers to the first and second questions. We think that the report of the commission of the facts elicited by their inquiry would be regarded as a privileged communication, and as such would not be actionable without proof of express or actual malice.

<div align="right">

THOMAS DURFEE,
CHARLES MATTESON,
JOHN H. STINESS,
P. E. TILLINGHAST,
GEORGE A. WILBUR.